Kenneth M. Stern for Appellant GUPTA. I pointed out in my brief several reasons why the informant cannot be considered a confidential informant. As the redacted transcript has shown, this informant has been intimately and critically involved in a participant, a participant in this alleged crime from the very beginning. Well, no, Your Honor. No, Your Honor, not at this stage. It would be the federal, the stage, the standard that would apply to be of any state habeas corpus. Well, isn't it whether it's an unreasonable application of the Supreme Court precedent? Yes, or an unreasonable interpretation of the facts to the case. Well, if in this case the state court conducted an in-camera hearing, as our cases require, how was the state's court decision contrary to or an unreasonable application of the Supreme Court precedent? It seemed like it followed the procedure. They didn't follow, well, I don't believe it did. It doesn't follow Revario. There was a procedure used, which in so far as that goes is fine, except not the wrong questions were asked during those ex parte proceedings. The not, not only were the wrong questions asked, but there was, were not sufficient questions in various areas. For example, the court never really fully developed or inquired about the facts concerning the consideration that the informant was being given by the government for involving Mr. Gupta in the, in the transaction. The informant was under prosecution of his own for state felony drug charges, and he was going to be given some form of leniency, but he was not. And so the court never really developed a proper consideration for involving Mr. Gupta. Those facts. I'll take later what's on my mind so you can educate me. I'm quite sympathetic to Gupta's claim on this. It seems to me that his entrapment case really depended a lot on what Josh said to him, what his compensation was and what he said to Josh. And when I read the partial material that was made available to us from the judges in camera examination, it looked as though Josh was a little equivocal. The jury is not likely to believe the defendant without some kind of corroboration from Ms. Josh. So if I were the trial judge, it would be a real hard call for me to keep Josh's identity secret. On the other hand, we're several removes. We can't review for abuse of discretion like the state appellate court. We have to review for acting contrary to or an unreasonable application of Roe v. Arrow. And then I look at Roe v. Arrow, and it says no fixed rule is justifiable. It calls for balancing public interest against the right to prepared defense. And it has to take into consideration the crime charge, the defenses, the significance, other relevant factors. It's such a mushy test. I don't see how we can say that the state court got it wrong. Well, I think Roe v. Arrow, there is some language to that effect, but if you look at. Yeah, I just read to you. Yeah, but if you look at Roe v. Arrow in its totality, and it has been interpreted at least by the Fourth Circuit, that Roe v. Arrow says if the informant is a participant in the crime, then under Roe v. Arrow, they're not a confidential informant. And also, I think the state court misapplied the test. The test is not simply whether it's exculpatory evidence. The test is also there's a second prong, an alternative prong, whether it's relevant and helpful to the defense. And here I think you get into the prejudice if you link the two together. Even assuming that the informant were to get up on the witness stand and say, no, I didn't cajole or induce Mr. Gup to do this. He was more than willing all the time. I didn't coerce him. I didn't play upon our friendship. You still have the factor of the fact that he's being given consideration by the government. And I think the jury is, in essence, being told by the court that in not being called to testify or in not having the identity disclosed, they're basically being told there's nothing that this witness or this informant can do that would be helpful to you in determining whether this defensive entrapment exists. And I believe that it certainly is relevant and helpful, which is the Supreme Court standard. It's relevant and helpful to Mr. Gupta to put the informant on the witness stand, let him deny everything, but then have the jury be able to make a credibility determination of whether or not the informant is lying based upon the given consideration he's being given. But there's balancing that has to go on, too. There's another side to the relevant and helpful. So how can we say that the court got it wrong when they balanced it against Mr. Gupta? Because the state court never considered these facts. And under the federal habeas corpus standard, if they don't consider these facts, then habeas corpus relief is available. No, that's not right. Our court has said repeatedly that even if the state court is totally unaware of the Supreme Court authority, if it doesn't act contrary to it, it's okay. Well, what I'm saying, Your Honor, no, I understand that. But what I'm saying is they've misapplied the facts of the state court proceedings to the Revario case. So I'm not saying that it matters whether or not they're aware of Revario. They're misapplying the facts. But the court said he was a percipient witness. I mean, you're saying that the court didn't even look at whether it was relevant and helpful. I mean, the court said, yeah, it was present at the scene, a percipient witness. I mean, the court went through all of that. And then the court went on to say that he didn't have any exculpatory evidence to offer and then looked at the government's reason for not disclosing the informant. I think that's a critically important fact for Mr. Gook to be able to put that witness on the stand and cross-examine him on that fact rather than have it come out the way it did, that this witness simply could provide absolutely nothing that could be helpful. I think the court of appeals' failure to look and use those facts or recognize those facts means this court is not bound by those facts. Also, there are some indications. I believe it happened twice. Once, I think, near the beginning of his testimony where the informant says in camera he's asked about whether or not there was some sort of coercion, et cetera. And he said, well, no, not really. I think that's an area of cross-examination because I think when you say, well, no, not really, you're saying maybe there is something there. But I don't think that was ever faced. He said, not really. And he said, not at that time. Right. And that was later in the testimony. And Josh indicated with a negative pregnant that maybe Gupta wasn't so predisposed. Right. Later concerning whether or not during the transaction itself the court asked him, well, did he seem to want to go forward. And Josh indicated, well, there was hesitancy there. And then he speculated as to the hesitancy. I see I have about a minute and 39 seconds left. I would like to say that, Your Honor. Good afternoon, Your Honors. Deputy Attorney General Trace Littell representing the respondent and appellee. As Justice Judge Kleinfeld may mention, the fact that this case is unique compared to most of the cases that we've cited because we are here on habeas and, of course, that means we are applying the adepa deference standard. Let me tell you what's on my mind. I'm really troubled by this case. It doesn't seem right to me that the police can put on the case without the informant. Ordinarily, in my experience as a lawyer and as a judge, what they do is they wait until the informant's done what he needs to do, and then they expose him and make all their cases. The informant testifies. And a lot of the jury determinations depend on the credibility of the informant. That's the usual course. So, in this case, I look at Robillard, which is the Supreme Court case that says sometimes the government can keep the informant's identity secret. It was an almost identical case in terms of the relevant facts and circumstances. And it even said Doe, the unnamed informant, had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. And then the Supreme Court says the government's privilege to keep the informant's secret has to give way. They have to disclose this John Doe's identity so that the defendant can use him. The only difference I can see here is that that was a federal conviction. And this, so it's abusive discretion review. And this is habeas review. So we have the deferential 2254D test. And it looks to me like Robillard was such a mushy, balancing, multifactor, multipronged test. I don't see how we could ever grant habeas in a state case under the Robillard test. But that doesn't sound right either. So I don't know what to do. Well, in terms of your indication that Robillard seems to be very similar to the present case, it is our position that Roviaro actually is quite different. If you look at the facts in Roviaro, all you have is the confidential informant and the defendant in that case. The entrapment is the only defense. No question Gupta sold the dope. Entrapment is the whole deal. And there are only two witnesses in the world who know what was said, Gupta and Josh. But also, if you look at the facts in this case, and I do encourage all the members of the panel to actually go through the entire transcript, because the reply brief, I think, points out, obviously, the portions of the hearing that are beneficial to its case. However, the whole flavor of the transcript indicates that the confidential informant in this case was not an active participant, was not participating in the negotiations, and truly was just an introducer. What about the matter? Well, when you're looking at the Roviaro factors, one of the factors to consider is whether the ---- Sets up the deal, talks the guy into it, and then disappears. I don't see how that makes him any less relevant. On the entrapment defense, it seems like he's the whole thing. Well, in terms of the entrapment defense, as the Court of Appeals and all the state courts found, that there did ---- there seemed to be no exculpatory evidence that was at least that any of the hearings disclosed. Exculpatory evidence. And I ---- Josh even hinted at it in his in-camera examination with those very qualified statements he made, not at that time and so forth. Well, I think when you look at the transcript as a whole for the in-camera transcript, and it took me a while to understand it, but he's referring to different periods of time. At times he makes statements referring to his initial contact over the phone in Deputy Androgna's presence when he called the defendant, the petitioner. And all he stated, and this is the only information we have on the record, was that he has a buyer who would like to buy 10 pounds of marijuana and a half a pound of methamphetamine. But didn't he set up the call to the source? The call to the ---- you mean Gupta's? No, I believe that the record discloses that Gupta then called his source on a cellular telephone during the transaction, that the confidential informant had no problem. He overheard part of that conversation. And at that point he heard, and I refer to opposing counsel's reference to any reluctance or hesitancy on ---- When you say he, who are you referring to on he? Oh, I'm sorry. Opposing counsel refers to reluctancy or hesitation on the part of the petitioner. However, if you read further through, the CI states that the hesitation or reluctance is related to whether Deputy Husband's actually had the money. It didn't relate to his intent to actually go through with the transaction. You can sort of say that's what he thought, you know. So it still goes back to interpreting that really Josh and Mr. Gupta are the only witnesses to whether there's entrapment or not. Well, Deputy Husband's was also at the transaction as well. And Deputy Androgna was present during the telephone conversation, the initial telephone conversations, during which the CI called Petitioner. And so in that sense, it's not just the CI's word and the defendant's. They aren't just the only two people present there, because you do have the law enforcement personnel there as well. Just to clarify some points in the record, at least I think was very helpful for me, in terms of figuring out who was actually present, who wasn't present, it does appear that the confidential informant was not present throughout the whole time of the transaction and might have drifted in or out. I don't see what that has to do with entrapment. Well, in terms of whether he was actually present. Suppose I'm in an illegal enterprise, and I hire somebody, and she doesn't know I'm in an illegal enterprise. She thinks she's going to be a secretary for a respectable lawyer. And I hire her, and then she unknowingly engages in what she thinks are deliveries of papers to my clients, and actually they're contraband, and I'm not even there. I set her up for this, and even though I'm not there when she makes the deliveries, I'm the one that's criminally responsible, not her. But the degree of participation and whether the CI was present during the transaction goes to the entrapment defense in terms of was he acting as a government agent, and was there actually entrapment on the part of the CI towards the petitioner in this case. So when you look at whether he was present, that, let's see, Deputy Husbands said that, and this is at SCR 265, that the CI was only present for a portion of the time. If you look at the in-camera hearing transcript, the CI does not contradict this, that his questions are only related to what did you hear while you were there. In terms of whether the CI had any part of the negotiations, there has been evidence that the CI really only made introductions, and this is at the reply excerpts of record, page 21. The CI states, basically, I didn't say anything, and then he says that was pretty much just discussions between the petitioner and Deputy Husbands. He reiterates at the reply excerpts of record, this is at page 25, that he introduced the petitioner and Deputy Husbands, and that then they proceeded to discuss business. This is excluded. Wait a minute. Let me get back to when Gupta makes his decision to engage in this crime, which is where we look for the entrapment. I'm reading the transcript here. So why did the discussion take 25 minutes? I think that's you asking the question. And then you get an answer from the unknown, Josh, and it includes a quote, you sure you want to make the deal? And then you ask Josh, did Gupta ever express any reservation? And Josh says, I think there was a bit of a reservation for a moment. And then he qualifies it, but I mean not like backing out of the deal. And then he speculates that the reason for the reservation is how much. Well, maybe so. Maybe all that's right. But this is a dope dealer and you're letting him walk, so he's going to get impeached with his interest in pleasing you when he testifies at trial, if his identity is ever disclosed. And the jury may believe that Gupta was reluctant and Josh pushed him into it. I don't know. Why isn't that the appropriate time and place to focus? In terms of the actual transaction, what's going through, I agree. I think that is the permanent time to focus. And at least from the record that we have, the facts don't disclose that there's necessarily any entrapment going on. And it was very clear at this time when the hearing was conducted. Well, that's what you would argue in front of a jury if the jury heard from Josh and heard from Mr. Gupta. Yes. And it's also the entrapment defense was actually one that was advocated at trial, too, that it would seem that at this time period as the hearing progressed, that everyone had in mind that this was definitely a possibility. I'm sorry? They don't have a chance without Josh. Well, in terms of you know, I also get back to the fact that this is a balancing test that needs to be applied. This isn't just so much of is the case relevant or helpful to the Petitioner in this case, that the court here, and they did conduct a hearing. They did ask the questions. And they did ultimately conclude that there was no exculpatory evidence, obviously with a mind to was there a possible entrapment defense. But they also balanced the government interest in protecting the safety of the informant. And if you look at the reply excerpt to record pages eight or nine, this isn't just a general, well, this confidential informant could be harmed. Here, Deputy Androgna testified that based on Petitioner's own specific background, where he did have prior convictions. And Deputy Androgna, excuse me, Androgna have a history or knew of the Petitioner beforehand. And it appears that there was a history of intimidation to people in the community that he was truly concerned about this individual C.I. And the court. Over time. Oh, excuse me. All right. If there's no further questions. Finish your sentence. Actually, I don't remember what it would have been. If there's no further questions, I'm prepared to submit on the papers. Thank you. Yes, thank you, Your Honors. There's been much talk of the balancing test, but we don't get to the balancing test under Rovario unless the informant is a mere tipster. If, as is the case herein, the informant is an active participant in the crime, then there is no balancing test. Under Rovario. Could you point to the page in Rovario? I couldn't point to one particular page, Your Honor. But if you look at the case in its totality and is interpreted by the Fourth District, I believe the case indicates that only applies, balancing only applies to mere tipsters. And I believe there's a case I've cited in my reply brief. I think it's the Giles case. I think it's a Third Circuit case, J-I-L-E-S, which states that. And here I'd like to point out some of the, in rebuttal, some of the things that show he was a very active participant that I think has been overlooked a little bit perhaps by myself and the Pele council. The informant, Josh, did, was involved in the negotiation of the terms. Not at the time of the exchange, but prior to. In fact, he asked his handler, you know, what should I tell him in terms of amounts and prices? And his handler, one of the special agents told him, well, tell him so much, I want so much and I want to pay this. I believe he told him both amount and price. It may have just been amount. So he actually started the negotiations. And it was Josh who tipped the police off. He gave them the signal the drugs are present. Come and arrest Mr. Gupta. So he was heavily involved in this. Had he not been working with the law enforcement agency in this regard, but was just involved privately with Mr. Gupta, he would have himself been convicted and he would not have been even entitled to a minor participant. Well, that shows how much of an active participant he was. And I believe the California Court of Appeal did misapply federal laws dictated by the Supreme Court because they only used the exculpatory evidence test. They did not use the alternative relevant and helpful test. It would have been relevant and helpful to put Josh on the stand and have to have him admit that, yes, he's being given consideration for involving Mr. Gupta. And I think the record infers, I don't think it actually states, that Josh had prior felony convictions, which have also been a field of impeachment. Thank you, Your Honor. Thank you.
judges: Oakes , Kleinfeld, Callahan